**ARGONAUT INSURANCE COMPANY,
a Corporation, Plaintiff-Appellant,**

v.

**NATIONAL INDEMNITY COMPANY, a
Corporation, Defendant-Appellee.**

**No. 679–69.**

United States Court of Appeals,
Tenth Circuit.

Jan. 7, 1971.

el" motif. *Id. See also,* Comment, The Twilight Zone: Meanderings In The Area of Performers' Rights, 9 U.C.L.A. L.Rev. 819, 840 (1962).

Michael C. Stewart, Oklahoma City, Okl., for plaintiff-appellant.

R. D. Looney of Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for defendant-appellee.

Before BREITENSTEIN and SETH, Circuit Judges, and TEMPLAR, District Judge.

BREITENSTEIN, Circuit Judge.

We have here a controversy between two insurance companies over coverage and liability for damages arising out of an automobile accident.

Plaintiff-appellant Argonaut Insurance Company issued a liability policy to Auto Driveaway Company whose business is the transportation of cars from one destination to another. Defendant-appellee, National Indemnity Company, issued a similar policy to Executive Car Leasing Company whose business is the leasing of cars to the public. Both policies were in force at the time of the accident.

A lessee of Executive terminated his lease. Executive engaged Driveaway to transport the car from Miami, Oklahoma, to Los Angeles, California. Through arrangements made by Driveaway, Nancy Blankenship took possession of the car to drive it to Los Angeles. In Oklahoma City, while en route, she ran a stop sign and struck a car driven by Seymour who died as a result of injuries sustained in the accident.

The administratrix of Seymour's estate sued Driveaway and Blankenship. Both insurance companies had timely notice of the accident and the suit. National, the insurer of Executive, refused to defend. Argonaut, the insurer of Driveaway, defended and made a settlement of $55,000. Before the court approved the settlement National was given an opportunity to object but did not do so. Argonaut paid the judgment and sued National on the ground that National had primary coverage. The recovery was within the limits of each policy. The trial court held that Argonaut had primary coverage and this appeal followed.

Both policies contained identical "other insurance" provisions.[1] The parties stipulated that the "policies of insurance were contracted by the separate parties in the State of California."

Argonaut says (1) California law controls, (2) where "other insurance" clauses of the type found here are in the liability policies of both the driver and the owner, effect is given to the excess provision of the driver's policy, and (3) the insurer of the owner is primarily liable and must bear the whole loss within the limits of its policy. See American Automobile Insurance Company v. Republic Indemnity Company of America, 52 Cal. 2d 507, 341 P.2d 675. Under this theory National, the insurer of the owner, is primarily liable and Argonaut, the insurer of the driver, is liable only for excess. There is no excess because the recovery was within the limits of each policy. Argonaut argues that under the stated rule it can recoup from National.

National says that California law governs only policy issuance and cancellation and that policy construction is controlled by Oklahoma law because the accident occurred there. Our attention is directed to no Oklahoma decision regarding the effect of identical "other insurance" provisions. We need not speculate on what the Oklahoma law may be because we believe that other policy provisions control the result.

Attached to each policy is a pertinent endorsement. The general

---

1. The provisions read: " * * * If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collecti-ble insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

rule is that provisions contained in an endorsement prevail over those in the body of the policy. Farmers Ins. Exchange v. Ledesma, 10 Cir., 214 F.2d 495, 498. Also, when written and printed portions of a policy are repugnant, the written clauses will prevail over the printed. Newfoundland American Insurance Company, Ltd. v. Suesz, 10 Cir., 289 F.2d 694, 697; see also Bluewaters, Inc. v. Boag, 1 Cir., 320 F.2d 833, 835. We turn our attention to the endorsements.

The National policy had a typewritten "DRIVEAWAY" endorsement which provided in its ¶ 5 that:

"This insurance shall be considered as excess insurance where other insurance exists in the name of or for the benefit of the insured and this insurance shall not apply and the company shall not be called upon to contribute to the payment of any loss until all other insurance shall have been exhausted."

Argonaut says that this provision does not apply because the same endorsement provides in its ¶ 2 that the insured shall report to the insurer the description of each covered automobile and the "date of purchase" and that the insurance shall continue in effect "not more than fifteen days from the date of purchase." Argonaut points out that the car had been purchased more than a year before the day of the accident and argues that the endorsement does not apply. Also Argonaut emphasizes that Blankenship was under directions to wire Executive when she took possession of the car, that she did so, and that Executive reported to its insurer National so that the car would be covered.

■ The arguments do not persuade us. Executive owned a car in Oklahoma which it wished transported to California because of lease termination. The actions taken with regard to notice were to make certain of insurance coverage. The provisions of endorsement ¶ 2 with regard to coverage for fifteen days from

date of purchase may or may not apply to a situation where the insured is securing the return of a leased car. That is a matter between Executive and its insurer, which so far as the record shows accepted the notice and placed the car under policy coverage. Endorsement ¶ 5 clearly states that the coverage shall be excess and thus vitiates the effect of the printed "other insurance" provisions of the policy.

■ This brings us to the Argonaut policy. Argonaut's insured, Driveaway, had an Interstate Commerce Commission permit for the conduct of its driveaway business. Pursuant to ICC regulations the Argonaut policy had a printed endorsement which reads in pertinent part:

"Within the limits of liability * * * it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy * * * shall relieve the Company from liability hereunder * * *."

Driveaway entered into an "Independent Contractor Agreement & Bill of Lading" with Blankenship. Therein it was agreed that:

"3. Driveaway has a current valid insurance policy in the minimum amount of at least $25,000/$100,000 Bodily Injury and $10,000 Property Damage Liability, said policy covering Driver as Owner's authorized operator."

Blankenship had possession of the car under authority from Driveaway and drove negligently. The ICC endorsement, although not expressly referring to the "other insurance" provisions, says that no condition, provision, stipulation, or limitation of the policy "shall relieve the Company [the insurer] from liability hereunder." If the Argonaut position is accepted, it will be relieved from any liability except for excess coverage. We believe that the effect of the endorsement was to make Argonaut the primary insurer.

Whatever may be the liability of National under its policy, we agree with the trial court that "* * * Argonaut cannot escape the plain terms of its insuring agreement in this case." The ICC endorsement imposes primary liability and eliminates any need for consideration of the effect of the identical "other insurance" clauses. We have no question of excess because the recovery was within the limits of the Argonaut policy.

Affirmed.