[No. 3051-1.   Division One.   October 14, 1975.]

TRANSPORT INDEMNITY COMPANY, ET AL, *Appellants*, v.
ROLLINS LEASING CORP., ET AL, *Respondents*.

*Carney, Stephenson, Sigueland, Bradley, Smith &
Mueller* and *Milton C. Smith,* for appellants.

*Moriarty, Long, Mikkelborg & Broz* and *Jeremiah M.
Long,* for respondents.

JAMES, J.—This appeal concerns an aspect of the conflict
which arises when two automobile insurance policies pro-
vide coverage for the same claim but both policies contain
"excess" insurance clauses. By *Pacific Indem. Co. v. Feder-
ated Am. Ins. Co.,* 76 Wn.2d 249, 456 P.2d 331 (1969),
Washington opted for the "general rule" that because such
provisions are mutually repugnant, they must be disre-
garded and each insurer held accountable for its pro rata
share of the covered loss. The opinion adopts the rationale
of *Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co.,* 28
N.J. 554, 562, 147 A.2d 529, 69 A.L.R.2d 1115 (1959):

> As applied to the facts of the present case, both policies
> provide that they shall be "excess" insurance. However,
> it is obvious that there can be no "excess" insurance in
> the absence of "primary" insurance. Since neither policy
> by its terms is a policy of "primary" insurance, neither

can operate as a policy of "excess" insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the cost of the settlement and expenses.

Plaintiffs, Transcon Lines (Transcon), a common carrier operating under a certificate issued by the Interstate Commerce Commission, and its liability insurance carrier, Transport Indemnity Company (Transport), seek a judgment against defendants, Rollins Leasing Corporation (Rollins) and Insurance Company of North America (INA), to recover the amount paid in settlement of a personal injury claim. The claimant was injured through the fault of Transcon's employee while the employee was operating a truck which Transcon had rented from Rollins. The rental agreement required Rollins to provide liability insurance for Transcon. INA wrote the policy which Rollins provided.

Both the Transport and the INA policies, by their terms, purport to provide only "excess" coverage. But each contends that the other's policy was, in fact and law, a policy which provided "primary" coverage. The trial judge denied plaintiffs' motion for a summary judgment and granted defendants' motion for a summary judgment of dismissal. We do not agree.

Transport's theory is that the rental agreement obligated Rollins to provide "primary" insurance because if "it was not Rollins' intent to provide primary coverage, it should have said so; and its failure to do so in understandable language in the Rental Agreement must be construed against it . . ."

But INA points out that the rental agreement contains the following provision:

RENTER BEING ONE OF THE ASSUREDS UNDER THE INSURANCE POLICY COVERING SAID VEHICLE, . . . agrees to comply with all the terms and conditions of said policy, which by reference thereto is incorporated

herein and made a part thereof. A copy of said policy is available for inspection at the main office of OWNER upon request by RENTER.

We find no ambiguity or absence of "understandable language" in the rental agreement. The INA policy was expressly "made a part" of the rental agreement. The policy unambiguously states that the coverage afforded is "excess" only.

INA's theory is that because of an endorsement to Transport's policy, Transport became "the primary insurer irrespective of the provisions of a rental agreement between its insured and another and irrespective of any other provision in the insurance contract between such insurer and its insured."

The endorsement upon which INA relies is required by the Interstate Commerce Act § 215, 49 U.S.C. § 315 (1970), which provides in pertinent part as follows:

> No certificate or permit shall be issued to a motor carrier or remain in force, unless such carrier complies with such reasonable rules and regulations as the Commission shall prescribe governing the filing and approval of . . . policies of insurance, . . . in such reasonable amount as the Commission may require, conditioned to pay, within the amount of such . . . policies of insurance, . . . any final judgment recovered against such motor carrier for bodily injuries to . . . any person resulting from the negligent operation, . . . or use of motor vehicles under such certificate or permit, . . .

Pursuant to the statute, the Interstate Commerce Commission promulgated section 1003.1 of its regulations (49 C.F.R. § 1003.1 (1967)) requiring that policies of insurance issued in compliance with section 215 of the Interstate Commerce Act contain a form B.M.C. 90 endorsement. The pertinent provisions of the endorsement are as follows:

> In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment recovered against the insured for bodily injury to or death of any person, or loss

of or damage to property of others . . . resulting
from negligence in the operation, maintenance, or use of
motor vehicles under certificate of public convenience
and necessity or permit issued to the insured by the
Interstate Commerce Commission, . . .

. . .

Within the limits of liability hereinafter provided *it is
further understood and agreed that no condition, provi-
sion, stipulation, or limitation contained in the policy*, or
any other endorsement thereon or violation thereof, or of
this endorsement, by the insured, *shall relieve the Com-
pany from liability hereunder* or from the payment of
any such final judgment, irrespective of the financial re-
sponsibility or lack thereof or insolvency or bankruptcy
of the insured. However, all terms, conditions, and limi-
tations in the policy to which this endorsement is at-
tached are to remain in full force and effect as binding
between the insured and the Company, and the insured
agrees to reimburse the Company for any payment made
by the Company on account of any accident, claim, or
suit involving a breach of the terms of the policy, and for
any payment that the Company would not have been
obligated to make under the provisions of the policy ex-
cept for the agreement contained in this endorsement.

(Italics ours.)

INA contends that the italicized wording of the endorse-
ment "renders Transport's 'other insurance' provision inap-
plicable and Transport liable" for the personal injury
claim. INA's contention presents a question of first impres-
sion in Washington. The question has, however, been con-
sidered in other jurisdictions with contrary results.

All of the decisions relied upon by INA[1] are based upon
the Tenth Circuit case of *Argonaut Ins. Co. v. National
Indem. Co.*, 435 F.2d 718 (10th Cir. 1971). In reaching the
result for which INA contends, that court simply con-

---

[1]*Argonaut Ins. Co. v. National Indem. Co.*, 435 F.2d 718 (10th Cir.
1971); *Hagans v. Glens Falls Ins. Co.*, 465 F.2d 1249 (10th Cir. 1972);
*Aetna Cas. & Surety Co. v. Arkin*, 365 F. Supp. 813 (N.D. Ill. 1973);
*Carolina Cas. Ins. Co. v. Belford Trucking Co.*, 121 N.J. Super. 583, 298
A.2d 288 (1972); *Allstate Ins. Co. v. Federal Ins. Co.*, 23 Md. App. 105,
326 A.2d 29 (1974).

cluded, without citation to precedent or disclosure of its rationale, that:

> The ICC endorsement, although not expressly referring to the "other insurance" provisions, says that no condition, provision, stipulation, or limitation of the policy "shall relieve the Company [the insurer] from liability hereunder." If the Argonaut position is accepted, it will be relieved from any liability except for excess coverage. We believe that the effect of the endorsement was to make Argonaut the primary insurer.
>
> Whatever may be the liability of National under its policy, we agree with the trial court that "* * * Argonaut cannot escape the plain terms of its insuring agreement in this case." The ICC endorsement imposes primary liability and eliminates any need for consideration of the effect of the identical "other insurance" clauses.

*Argonaut Ins. Co. v. National Indem. Co., supra* at 720-21. We cannot agree with the conclusion that "[i]f the Argonaut position is accepted, it will be relieved from any liability except for excess coverage."

■ The stated purpose of section 215 of the Interstate Commerce Act is to provide "security for the protection of the *public*." (Italics ours.) The clearly expressed intent of the form B.M.C. 90 endorsement is to provide that under no circumstances will the insurer be relieved of liability to "any person" injured or damaged as a result of its insured's negligence. The "public" is thereby afforded the legislatively mandated "protection."

But, by its terms, the endorsement also expressly provides that all terms of the policy "are to remain in full force and effect as binding between the insured and the [insurer]." One of the terms of Transport's policy which remains "in full force and effect" is that it affords only "excess" coverage.

"Primary" coverage is a term of art used in judicially resolving the conflict resulting when two or more "excess" policies cover the same loss. Although a policy with a form B.M.C. 90 endorsement does provide "security" for the protection of the public, the endorsement does not purport to

provide "primary" coverage. By agreeing to be unconditionally bound to indemnify its insured, Transport neither expressly nor impliedly agreed to forego its right to contribution from another insurer of the same risk. We are aware of no public policy consideration which should require a common carrier insurer to do so.

Our view of the effect of the form B.M.C. 90 endorsement is shared by the California Supreme Court. In *Argonaut Ins. Co. v. Transport Indem. Co.*, 6 Cal. 3d 496, 492 P.2d 673, 99 Cal. Rptr. 617 (1972), the court considered the effect of an endorsement required by the California Public Utilities Code. The P.U.C. endorsement is identical to the form B.M.C. 90 endorsement. In concluding that it did not establish "primary" coverage vis-a-vis other available coverage, the court pointed out that where dual coverage is provided for the same risk, public policy plays a minor role in the determination of which coverage is primary. The California court concluded at page 505:

> In this court's opinion, however, the P.U.C. endorsement does not nullify the excess insurance clause. As hereinabove indicated, the purpose of the endorsement requirement is to protect the public and not to determine which of two insurers should be held ultimately liable. The endorsement language, considered as a whole, suggests an intent to protect injured persons by precluding defenses based on the insured's failure to cooperate or breach of condition, while permitting the insurer in such instances to obtain reimbursement from the insured. The language of the endorsement shows no intent to make a policy to which it is attached primary over any other insurance in spite of a valid excess insurance clause, and it would be unreasonable to give it such a meaning and effect, particularly in view of the fact that under the endorsement the insured is required to reimburse the insurer for any payment that the latter would not have been obligated to make under the provisions of the policy except for the agreement contained in the endorsement.

We hold that the attachment of the form B.M.C. 90 endorsement did not make Transport the "primary" insurer. *Accord, Marwell Constr., Inc. v. Underwriters at Lloyd's,*

465 P.2d 298 (Alas. 1970). Accordingly, Transport and INA "are left with their contracts, as they themselves have made them." *Pacific Indem. Co. v. Federated Am. Ins. Co.*, 76 Wn.2d 249, 253, 456 P.2d 331 (1969).

The judgment of the trial court is reversed and the cause remanded for the entry of judgment apportioning liability by prorating the loss on the basis of policy limitations. *Cf. Pacific Indem. Co. v. Federated Am. Ins. Co.*, 82 Wn.2d 412, 511 P.2d 56 (1973).

WILLIAMS, C.J., and CALLOW, J., concur.