372 N.E.2d 504 (1978)
RYDER TRUCK LINES, Inc. and Liberty Mutual Insurance Company, Plaintiffs-Appellants,
v.
CAROLINA CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 3-875A159.
Court of Appeals of Indiana, Third District.
February 15, 1978.
Rehearing Denied April 12, 1978.
*505 Peter G. Koransky, William S. Spangler, of Spangler, Jennings, Spangler & Dougherty, Gary, for plaintiffs-appellants.
John T. Lorenz, Indianapolis, for defendant-appellee.
GARRARD, Judge.
Ryder Truck Lines, Inc. (Ryder) and Liberty Mutual Insurance Company (Liberty Mutual) brought this action to require Carolina Casualty Insurance Company (Carolina) to indemnify them for costs they incurred in settling a claim for personal injuries. The trial court, after a hearing based on stipulated facts, entered summary judgment for Carolina. On appeal we are required to interpret the insurance policies issued by Liberty Mutual and Carolina so as to determine their respective liabilities for the loss in question. Having considered the parties' contentions, we affirm the trial court's determination that Liberty Mutual provided primary coverage for the loss. Since the settlement was within that policy's limits, Carolina is not liable for contribution.
The dispute arises out of the following facts. On July 24, 1968 Ryder entered into a one-way lease of a tractor-trailer owned by Corkren & Company, Inc. (Corkren) for the transport of goods from Gary, Indiana to Nashville, Tennessee. Corkren also supplied a driver, one James C. Weldon. Under the terms of lease Corkren was to receive 73% of the fee Ryder earned for transporting the goods. In return Corkren agreed to deliver the tractor-trailer in good working order and to maintain the vehicle throughout the trip by furnishing gas and oil and any repairs. In addition Corkren was obliged to pay Weldon's salary, compensation coverage and payroll taxes. However, Weldon was operating the vehicle under the authority of permits issued to Ryder by the Interstate Commerce Commission (ICC) and Public Service Commission of Indiana (PSCI). The lease stated that Ryder was to have exclusive possession and control over the leased equipment.
On July 24, 1968 while en route to Nashville, Weldon was involved in a collision with an automobile wherein James F. Cooper, the driver of the auto, and other members of his family were injured. It is stipulated that the injuries they received were proximately caused by Weldon's negligence. The Coopers filed suit in the United States District Court for the Northern District of Indiana, Hammond Division, seeking damages. Subsequently, a settlement was made with the Coopers for $46,000, and the suit was dismissed with prejudice. In the settlement Ryder paid $25,000, and Liberty contributed $21,000. In addition both incurred attorneys' fees and other costs. As a result of the respective insurers' failure to reach an agreement as to their respective *506 liabilities, Liberty Mutual and Ryder brought this suit for indemnification.
After suit was filed in Lake County Circuit Court on July 28, 1972 it was venued to Starke County Circuit Court. In that court, the defendant moved for judgment on the pleadings arguing that its insurance policy precluded a direct action against the company. This motion was denied September 15, 1972. Thereafter both parties engaged in discovery. The plaintiffs moved for summary judgment on June 27, 1973; on July 20, 1973 the defendant moved for summary judgment. The parties entered into a stipulation of facts to facilitate the trial court's ruling on these cross-motions. In addition to the facts summarized above, it was agreed that Weldon was operating the vehicle within the scope of his employment with Ryder. At the same time it was settled that Weldon was operating the vehicle with the permission of the truck owner, Corkren. The trial court, after concluding that the plaintiffs could sue Carolina in a direct action, determined that the Liberty Mutual policy provided primary coverage for the loss and that Carolina was not required to indemnify the plaintiffs in any amount.
Appellants contend that Weldon was not an "insured" under the Liberty Mutual policy. Two provisions are relied upon to establish this exclusion from coverage. The first states, in substance, that an "employee" of the owner of a "hired automobile" is not an insured. Under the second, coverage is denied one who is not an employee of Ryder where the loss occurs while the vehicle is not being used "exclusively" in Ryder's business. It is asserted that by virtue of these exclusions Weldon was an "insured" only under the Carolina policy. As a result, it is argued that Carolina must indemnify appellants for the costs they incurred in settling the suit brought by the Coopers. In the alternative appellants argue that if both policies are applicable to the loss, Carolina should be required to contribute the first $25,000 because of the interplay of a deductible provision in the Liberty Mutual policy and the "excess" clause in the Carolina policy. As to any amount above the deductible amount, it is claimed that Carolina must share responsibility with Liberty Mutual on a pro rata basis due to the respective "other insurance" clauses of the policies.

I.
The "Persons Insured" portion of the Liberty Mutual policy states, in relevant part:
"Each of the following is an insured under this insurance to the extent set forth below:
* * * * * *
(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission.
* * * * * *
None of the following is an insured:
* * * * * *
(iii) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;"
The question presented is whether Weldon is an "employee" of Corkren, the owner of the tractor-trailer leased to Ryder, within the meaning of the Liberty Mutual policy.
Under the truck leasing agreement Corkren was obliged to supply a driver and to pay his wages. Corkren thus selected Weldon for employment. We assume, without deciding, that Corkren could have discharged Weldon if his conduct merited such action so long as Corkren fulfilled its obligations to Ryder. See Jackson Truck Co. v. Interstate M.F. Sys. (1952), 122 Ind. App. 546, 556, 104 N.E.2d 575, 579. At the same time, Ryder chose the destination to which Weldon was to drive and had exclusive possession, control, and use of the leased equipment for the duration of the "trip-lease." Under similar facts it has been concluded that the driver of a leased vehicle is a "joint *507 employee" of the lessor and lessee. Transport Motor Express v. Smith (1974), 262 Ind. 41, 311 N.E.2d 424; Jones v. Furlong (1951), 121 Ind. App. 279, 97 N.E.2d 369. Concluding that Weldon is a "joint employee" of Ryder and Corkren for purposes of the Workmen's Compensation Act, IC 22-3-1-1 et seq., Transport Motor Express v. Smith, supra, or in an action for wrongful death does not necessarily resolve the issue in the present case. It does, however, support the conclusion that Weldon was not excluded from coverage. Additional factors lead us to the conclusion that Weldon is to be considered a statutory employee of Ryder, and that he is not excluded by the terms of the Liberty Mutual policy.
The provision of the lease under which Ryder assumes exclusive possession, control and use of the leased equipment is required by ICC regulation.[1] Under this regulation Weldon is considered to be subject to the control, direction and authority of the lessee. Cosmopolitan Mut. Ins. Co. v. White (D.Del. 1972), 336 F. Supp. 92, 99 (and cases cited therein). Given the strong policy of fixing responsibility for damages to injured parties is the holder of the ICC certificate who has leased a vehicle, it has been concluded that the driver is a "statutory employee" of the lessee. Wellman v. Liberty Mut. Ins. Co. (8th Cir.1974), 496 F.2d 131, 137. The Wellman court, construing a "hired automobile" exclusion identical to the one at issue here reasoned that an owner-operator of the leased vehicle would not be excluded from coverage. In Wellman the court was not resolving a dispute between two insurers after the injured parties were compensated; rather injured parties were seeking to satisfy a judgment rendered against an owner-operator from the lessee's insurer. Nonetheless, that the driver is considered a statutory employee of a lessee for liability purposes provides a sound basis for concluding that he is not an "employee" of Corkren within the meaning of the Liberty Mutual exclusion clause.
A third reason for our conclusion is that Liberty Mutual's policy contained an endorsement, again required by ICC regulation,[2] which provides, in substance, that no policy provision or stipulation is to insulate the insurer from paying a judgment rendered against the ICC certified carrier. As we will discuss more fully later in this opinion, this endorsement has been construed as requiring that the lessee's insurer be considered as supplying "primary" coverage even though other insurance is available by virtue of the lessor's liability policy. Thus, the ICC endorsement overrides the "other insurance" provisions of the lessee's policy. In the present case, it appears that the exclusion in the Liberty Mutual policy for employees of the vehicle owner is premised on the view that the owner will contemplate such risks in his own liability protection program. Annot. 32 A.L.R.2d 572 (1953). The purpose of the exclusion is to limit liability where other insurance will likely be applied to the loss. This is, in essence, the purpose for "other insurance" clauses. Given this similarity between the "hired automobile" exclusion and "other insurance" clauses, our acceptance of the view that the ICC endorsement makes Liberty Mutual the "primary" insurer of the risk in question is additional reason for concluding that Weldon is not an excluded "employee of Corkren." The reasons for allowing the ICC endorsement to override "other insurance" clauses in the lessee's policy are equally applicable to the other provisions *508 of the Liberty Mutual policy. Applying either provision, Liberty Mutual would limit its liability in a way inconsistent with the purposes of the ICC endorsement.
In short, ICC regulations and cases construing these regulations are consistent in fixing responsibility for personal injuries on the lessee operating a vehicle pursuant to its ICC certificate. This responsibility has been interpreted as requiring that the ICC endorsement makes a lessee's insurer "primary" despite the existence of other insurance. In our view, it is in keeping with these cases to hold that Weldon is not an "employee" of Corkren for purposes of excluding coverage under the Liberty Mutual policy.[3]
The second exclusion relied on by the appellants is contained in the "Truckmen-Form A" endorsement wherein it is stated:
"(b) Except with respect to the named insured or an employee thereof, but subject otherwise to the "Persons Insured" provision, the insurance does not cover as an insured any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or for others under any of the following conditions:
(1) If the bodily injury or property damage occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority, but this limitation shall not apply to an automobile while en route, at the request of the named insured, to engage in such exclusive use and not transporting property for others... .
provided, however, a driver or other person furnished to the named insured with an automobile hired by the named insured shall be deemed not to be an employee of the named insured."
To apply the exclusion it must be found that the operator of the truck is not an employee of the named insured and that the loss occurs while the vehicle is not being used "exclusively" in the business of the named insured. Even if we were to assume the former, there is no basis for concluding that the tractor-trailer in question was not being used exclusively in Ryder's business when the collision occurred. Appellants contend that since under Jones v. Furlong, supra, Weldon was a "joint employee" of Corkren and Ryder, the vehicle was not being used solely in Ryder's business. It is true that Corkren, as the lessor of the truck, stood to profit from the trip-lease arrangement. However, this does not mean that a loss that occurred en route fell within the exclusionary language under consideration. Ryder is in the business of transporting goods for hire. It designated the destination to which Weldon was driving when the accident occurred. The ICC and PSCI certificates under which it was operating authorized carriage over the route Weldon was driving. While Corkren took a substantial percentage of the shipping fee, this was but a cost of Ryder's business in fulfilling its shipping contract. We cannot say that the truck was not being used solely in Ryder's business on these facts.
The cases interpreting the exclusion at issue support our conclusion. It has been held that a leased vehicle was being used exclusively in the business of the lessee when the vehicle was being driven back to its "home base" from the point of delivery, Glens Falls Ins. Co. v. Cradlebaugh (W.D. Pa. 1966), 266 F. Supp. 630, aff., 376 F.2d 844 and where an empty vehicle was being driven to pick up cargo at the direction of the lessee, Johnson v. Angerer (1968), 16 Ohio App.2d 16, 240 N.E.2d 891. In the present case where the vehicle was carrying cargo to the destination designated by Ryder, it was being operated exclusively in Ryder's *509 business. As a result, Weldon could not be denied coverage on the basis of the exclusion in the "Truckmen-Form A" endorsement.

II.
Having concluded that Liberty Mutual's policy did not exclude Weldon from coverage, the question presented is the nature of the respective liabilities of Carolina and Liberty Mutual. Both policies purport to extend coverage to Weldon under provisions defining an insured as any person using the vehicle provided the actual use is with the named insured's permission. At the same time, both policies restrict the liability of the insurer if "other insurance" is available to cover the loss. The central issue in determining the responsibilities of the insurers is the effect to be given the ICC endorsement[4] contained in the Liberty Mutual policy.
The ICC endorsement, made a part of all liability policies covering those who operate in interstate commerce pursuant to ICC certificates, states in relevant part:
"Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured... ."
The leading case holding that this endorsement requires a carrier's insurer to provide primary coverage for losses due to the negligent operation of a vehicle is Argonaut Ins. Co. v. Nat'l Indem. Co. (10th Cir.1971), 435 F.2d 718. In that case, Argonaut insured a common carrier in the business of transporting cars; National Indemnity insured a car leasing company. An employee of the common carrier was involved in an accident while driving to a destination designated by the car leasing company. Argonaut and National Indemnity had identical "other insurance" provisions and each claimed that the other provided primary coverage. The court, while recognizing that the ICC endorsement was silent as to the resolution of conflicting "other insurance" provisions, held the endorsement made Argonaut the primary insurer. Accordingly there was no need to reconcile the "other insurance" clauses contained in the respective policies. The ICC endorsement overrode provisions of the Argonaut policy limiting its liability for losses incurred in the carrier's operation of the vehicle. This reasoning was followed in Hagans v. Glens Falls Ins. Co. (10th Cir.1972), 465 F.2d 1249, where it was held that the terms of a lease entered into by the respective insureds could not alter the effect of the ICC endorsement contained in the policy issued to a carrier operating a leased vehicle. The gist of Argonaut is that the ICC endorsement makes the lessee's insurer primarily liable, within policy limits, despite private agreements to the contrary.[5]
The Argonaut view of the ICC endorsement has been followed by other courts to override policy provisions that would limit the coverage of a common carrier's insurer to "excess" liability. Aetna Casualty and Surety Co. v. Arkin (N.D.Ill. 1973), 365 F. Supp. 813; Allstate Ins. Co. v. Federal Ins. Co. (1974), 23 Md. App. 105, 326 A.2d 29, modified on other grounds, 275 Md. 460, 341 A.2d 399.[6] It has been the conclusion *510 of these courts, with which we agree, that the broad policies of Section 215 of the Interstate Commerce Act, 49 U.S.C. § 315, of securing compensation to injured parties and encouraging safety on the highways are best achieved by holding the carrier's insurer primarily responsible for losses it incurs when engaged in interstate commerce.
This conclusion as to the effect of the ICC endorsement has not, however, been unanimous. Several courts have reasoned that so long as a party injured due to the operation of an interstate trucker is compensated for his injury, it little matters that this goal is achieved by holding the carrier's insurer primarily liable. Once this basic goal of compensation is achieved, the liabilities of two insurers covering the same loss should turn on the terms of their respective policies. National Mutual Ins. Co. v. Liberty Mutual Ins. Co. (D.C. Cir.1952), 90 U.S. App.D.C. 362, 196 F.2d 597; Transport Indem. Co. v. Rollins Leasing Corp. (1975), 14 Wash. App. 360, 541 P.2d 1226; Marwell Constr. Inc. v. Underwriters at Lloyd's Lon. (Alaska 1970), 465 P.2d 298. The argument has force, but it assumes, in our view, a too narrow view of the purpose of the act under which the ICC endorsement was promulgated. By fixing responsibility on the licensed carrier's insurer, injured third parties may avoid involvement in disputes that may arise between insurers.[7]Indiana Ins. Co. v. Parr Trucking Serv., Inc. (6th Cir.1975), 510 F.2d 490, 494. Further, federal regulations are clear in assigning responsibility for the operation of a vehicle to the licensed carrier in order to promote safety.[8] Assigning financial responsibility to the insurer to whom the licensed carrier pays premiums seems consistent with these goals. For these reasons we are persuaded that the Argonaut interpretation of the ICC endorsement is more in keeping with the purposes of the act under which it was promulgated, and as a result is the better rule of law.

III.
The final contention of the appellants is that Carolina's policy provides coverage for the first $25,000 of the loss in question due to the deductible provision in the Liberty Mutual policy. This results, despite Liberty Mutual's primary coverage, because of the "excess insurance" clause in the Carolina policy:
"With respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, or any hired private passenger automobile insured on the `cost of hire' basis, or any non-owned automobile, the insurance shall be excess insurance over any other valid and collectible insurance."
*511 Appellants argue that as there is no "valid and collectible" insurance up to the $25,000 deductible amount, Carolina's "excess insurance" clause comes into play.
We cannot agree with this assertion. The liability of an insurer under an "excess insurance" clause arises only after the limits of the primary policy are exhausted. See generally 8 Appleman, Insurance Law & Practice § 4914. In the present case, Carolina's excess coverage began, as the plain words of the policy provide, only if the loss was over the $100,000 limit in the Liberty Mutual policy for personal injury liability. Thus the "excess" liability contemplated focuses on the upper limits of the other insurance policy. The deductible provision does not affect this construction of Carolina's "excess insurance" clause. This result is consistent with the intentions of the parties. Where an insured purchases a liability policy with a deductible provision, the reduction in coverage results in lower premiums. Up to the deductible amount the expectation is that he will be a "self-insurer." At the same time the excess insurer, contemplating the possibility that other insurance exists to cover the same risk, limits its liability to amounts over and above that coverage. In such a situation the excess insurance clause should not be extended to cover an amount for which the insured, here Ryder, has bargained to become a "self-insurer." Cf. Aetna Cas. & Sur. Co. v. Market Ins. Co. (1974), Fla.App., 296 So.2d 555.
Affirmed.
ROBERTSON, C.J. (sitting by designation), and STATON, P.J., concur.
NOTES
[1] 49 C.F.R. § 1057.4 states in part:

"... [A]uthorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:
(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
* * * * * *
(4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement... ."
[2] See 49 C.F.R. § 1043.1 which was promulgated pursuant to § 215 of the Motor Carrier Act of 1935, 49 U.S.C. § 315. The form of the endorsement is set forth explicitly in a later part of this opinion.
[3] It is true that some courts have given effect to this exclusion on facts similar to the present ones. Gilkey v. Andrew Weir Ins. Co. (9th Cir.1961), 291 F.2d 132; Longsdorf v. Tunson (D.Colo. 1962), 200 F. Supp. 828. See cases collected in Annot. 32 A.L.R.2d 572 (1953). However, none of these cases raise the issue of the effect of the ICC regulations on the interpretation of the exclusionary language.
[4] See n. 2, supra. This endorsement is known as Form B.M.C. 90. 49 C.F.R. § 1003.1.
[5] Carolina Casualty Ins. Co. v. Transport Indemnity Co. (10th Cir.1973), 488 F.2d 790, relied on by appellants, is not to the contrary. In that case, the policies issued to the insurers of the truck lessor and lessee both contained the ICC endorsement. The court thus was remitted to the terms of the respective policies to determine the liabilities of the insurers.
[6] See also Indiana Ins. Co. v. Parr Trucking Serv. (6th Cir.1975), 510 F.2d 490, where the court approved Argonaut but found its application unwarranted due to the factual circumstances of the case. In Parr Trucking the insurer issued a policy to two named insureds which were part of the same trucking operation. One did a wholly intrastate business; the other was licensed by the ICC to do interstate trucking. When the intrastate carrier had interstate business, it operated under the interstate carrier's permit with the understanding that it would hold the interstate carrier harmless. Subsequently the interstate and intrastate carriers split into separate entities. The insurer, which knowledge of the hold harmless agreement, continued to accept premiums on the policy calculated on the basis of both companies' revenues. This continued even after the ICC cancelled the insurance certificate that had been filed by the insurer for the interstate carrier. On these facts the court gave effect to the hold harmless agreement where a loss occurred while the vehicle was leased to the interstate carrier and required the lessor's insurer to extend coverage to the risk. The application of this estoppel theory is not called for in this case.
[7] We realize that the benefit of a clear rule of liability where conflicting "other insurance" clauses are involved can be equally well achieved under Indiana law. Indiana Ins. Co. v. American Underwriters, Inc. (1973), 261 Ind. 401, 304 N.E.2d 783. However, this is not the only conflict that can arise as to the scope of coverage provided by two insurers. The ICC endorsement states "no condition, provision, stipulation or limitation" contained in the policy shall relieve the insurer of liability. There are ways an insurer may attempt to limit or escape liability in addition to the use of "other insurance" clauses.
[8] See n. 1, supra.