RYDER TRUCK LINES, INC., and Liberty Mutual Ins. Co., Appellants,

v.

CAROLINA CASUALTY INSURANCE CO., Appellee.

No. 279 S 40.

Supreme Court of Indiana.

Feb. 9, 1979.

Rehearing Denied April 6, 1979.

Peter G. Koransky, William S. Spangler, Gary, for appellants.

John T. Lorenz, Indianapolis, for appellee.

PIVARNIK, Justice.

This cause comes to us on a transfer petition from the appellants, plaintiffs below, following an unfavorable ruling in the trial court and the Third District Court of Appeals. *Ryder Truck Lines, Inc. v. Carolina Casualty Ins. Co.*, (1978) Ind.App., 372 N.E.2d 504. Ryder Truck Lines, Inc., and Liberty Mutual Insurance Company brought this action to require Carolina Casualty Insurance Company to indemnify them for costs they incurred in settling a claim for personal injuries.

The facts are not in dispute and can be rather simply set out. On July 24, 1968, Ryder Truck Lines entered into a one-way lease of a tractor-trailer owned by Corkren

& Company, Inc., for the transport of goods from Gary, Indiana, to Nashville, Tennessee. Corkren also supplied a driver, one James Weldon. Under the terms of lease, Corkren was to receive 73% of the fee Ryder earned for transporting the goods. In return, Corkren agreed to deliver the tractor-trailer in good working order and to maintain the vehicle throughout the trip by furnishing gas and oil and any repairs. In addition, Corkren was obliged to pay Weldon's salary, compensation coverage, and payroll taxes. Weldon was operating the vehicle under the authority of permits issued to Ryder by the Interstate Commerce Commission (ICC) and the Public Service Commission of Indiana.

While en route to Nashville on the above date, Weldon was involved in a collision with an automobile wherein the driver of the auto, and others, were injured. Weldon's liability for this collision and resultant injury is not questioned here. Subsequently, a settlement was made with the injured parties for $46,000 and the suit brought by the injured parties was dismissed. In the settlement, Ryder paid the first $25,000 deductible and Liberty, Ryder's carrier, contributed $21,000. As a result of the respective insurers failure to reach an agreement as to their respective liabilities, Ryder Truck Lines, Inc., and Liberty Mutual Insurance Company brought action to require Carolina Casualty Insurance Company, Corkren's carrier, to indemnify them for costs they incurred in settling the claim for personal injuries. The trial court determined that Liberty Mutual provided primary coverage and should sustain the entire loss. The judgment of the trial court was affirmed by the Third District Court of Appeals.

Both carriers claimed the other is the primary carrier, and that their own coverage if "other insurance" in the event there is no other insurance to cover the loss. That is, both policies pro-rated the liability of the insurer if other insurance is available to cover the loss. In addition to this, the Liberty policy contained an ICC endorsement which states in relevant part:

"Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, or of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured. . . ."

The ICC endorsement was a required provision of any insurance policy issued to a company operating under such permits. Section 215 of the Interstate Commerce Act, 49 U.S.C. § 315 (1963), requiring the ICC endorsement discussed above, was passed for the purposes of providing ways of securing compensation to injured parties and encouraging safety on highways.

The problem of conflicting "other insurance" provisions in policies of insurance, coupled with the ICC endorsement, is not new. This court discussed the problem of conflicting "other insurance" provisions in *Indiana Ins. Co. v. American Underwriters, Inc.*, (1973) 261 Ind. 401, 304 N.E.2d 783, in which a dispute arose between two insurance companies as to which was primarily responsible for a tortfeasor's damage when the tortfeasor comes within the coverage of both insurance companies which have "other insurance" clauses in their policies. The court, in an opinion authored by Justice Hunter, was concerned with securing compensation for the injured parties as well as protecting the insured person and so held that competing clauses between insurers should not be allowed judicial sanction at the expense of removing the insured's coverage. The court stated:

"Both policies, when read separately, appear to afford coverage to the insured. Yet each 'other insurance' provision forces an examination of its opponent. This 'circular riddle' can be resolved by (1) attempting to give effect to one policy provision over the other, or (2) applying mechanical or arbitrary rules . . . ., or (3) holding both clauses to be conflicting and mutually repugnant and, there-

fore, disregarding them. We find the last mentioned alternative to be the most reasonable. This method not only provides indemnification for the insured, but also, through the process of proration, gives effect to the general intent of the insurers . . . In such a case [as this] there exists *dual* primary liability." *Id.*, 261 Ind. at 407, 304 N.E.2d at 787. Our Indiana Court of Appeals further held in *Jones v. Furlong*, (1951) 121 Ind.App. 279, 97 N.E.2d 369, that the driver, under circumstances such as these, is a joint employee of both the owner and the lessee. The joint employee theory was followed more recently in *Transport Motor Express Inc. v. Smith*, (1974) 262 Ind. 41, 311 N.E.2d 424.

In affirming the trial court, the Court of Appeals in the present case relied on *Argonaut Insurance Co. v. National Indemnity Co.*, (10th Cir. 1971) 435 F.2d 718, which construes the ICC endorsement to mean that the carrier's insurer is to provide primary coverage for losses due to the negligent operation of the vehicle. The *Argonaut* case provides that the ICC endorsement made the carrier's insurer primarily liable and, therefore, there is no need to reconcile the "other insurance" clauses contained in the respective policies. On the other hand, *Indiana Insurance Co. v. American Underwriters, Inc. supra*, and cases in other jurisdictions, hold that once the basic goal of compensating the injured third party is achieved, the liabilities of the two insurers covering the same loss should turn on the terms of their respective policies. These cases support appellant's contention that each insurer is liable for a pro-rated amount.

█ The principle that each insurer is liable for a pro-rated amount is supported in *Transport Indemnity Co. v. Rollins Leasing Corp.*, (1975) 14 Wash.App. 360, 541 P.2d 1226. The *Rollins* case is almost identical to the case at hand. That appeal concerned an aspect of the conflict which arises when two automobile insurance policies provide coverage for the same claim, but both policies contain "excess" insurance clauses. Plaintiffs, Transcon Lines, a common carrier operating under a certificate issued by the Interstate Commerce Commission, and its liability insurance carrier, Transport Indemnity Company, sought a judgment against defendants, Rollins Leasing Corporation and Insurance Company of North America, to recover the amount paid in settlement of a personal injury claim. The claimant was injured through the fault of Transcon's employee while the employee was operating a truck which Transcon had rented from Rollins. Both Transport and Insurance Company of North America were insurers of the employee, but by the terms of their policies, each purported to provide only "excess" coverage, much the same as "other insurance" in the present case. Insurance Company of North America's theory, like the appellee's theory in the present case, is that because of an ICC endorsement to Transport's policy, Transport became the primary insurer irrespective of the provisions of a rental agreement or of any other provision in the insurance contract between such insurer and its insured. *Rollins*, supra, 14 Wash.App. at 362, 541 P.2d at 1228. The court went on to say:

"All of the decisions relied upon by INA are based upon the Tenth Circuit case of *Argonaut Insurance Co. v. National Indemnity Co.*, 435 F.2d 718 (10th Cir. 1971). In reaching the result for which INA contends, [the *Argonaut*] court simply concluded, without citation to precedent or disclosure of its rationale, that: The [effect of the] ICC endorsement was to make the holder of the ICC endorsement the primary insurer . . . and eliminates any need for consideration of the effect of the identical 'other insurance' clauses."

*Id.*, 14 Wash.App. at 363–64, 541 P.2d at 1229. The *Rollins* court then went on to state that by agreeing to be unconditionally bound to indemnify its insured, Transport neither expressly nor impliedly agreed to forego its right to contribution from another insurer of the same risk. *See also National Mutual Ins. Co. v. Liberty Mutual Ins. Co.*, (1952) 90 U.S.App.D.C. 362, 196 F.2d 597; *Argonaut Insurance v. Transport*

*Indemnity,* (1973) 6 Cal.3d 496, 99 Cal.Rptr. 617, 492 P.2d 673.

These cases and their holdings give respect to the express provisions of the bodies of the contracts between the respective parties here without nullifying or doing violence to the purposes and provisions of the ICC endorsement.

The only remaining issue is appellant's contention that Carolina Casualty should indemnify Ryder for the $25,000 deductible amount. Appellants argue that due to the deductible provision in the Liberty Mutual policy and the excess insurance clause in Carolina's, Carolina should provide coverage for the first $25,000. We agree with the Court of Appeals that the liability of the insurer under an excess insurance clause arises only after the limits of the primary policy are exhausted. In the present case, since Carolina's excess coverage began only if the loss was over $100,000 for personal injury liability, then the excess liability focused on the upper limits of the other insurance policy. As stated by the Court of Appeals, the excess insurance clause should not be extended to cover an amount for which the insured, here Ryder, has bargained to become a self-insurer. *Ryder Truck Lines, supra,* 372 N.E.2d at 511.

We thus grant transfer and vacate the opinion of the Court of Appeals, and hold that Carolina Casualty is liable for a prorated contribution on the amount of the settlement above the $25,000 deductible. This cause is accordingly remanded to the trial court with instructions to correct its judgment consistent with this opinion.

All Justices concur.