465 F.2d 1249
 Matthew Lee HAGANS, Jr., as Trustee for Ryder Truck Rental,
Inc., a Florida Corporation, and Liberty Mutual
Insurance Company, a Massachusetts
Corporation, Plaintiffs-Appellants,
v.
GLENS FALLS INSURANCE COMPANY, a New York Corporation,
Defendant-Appellee.
 No. 71-1540.
 United States Court of Appeals,
 Tenth Circuit.
 Sept. 5, 1972.
Rehearing Denied Nov. 8, 1972.
 
 Michael C. Stewart and A. T. Elder, Jr., Oklahoma City, Okl. (B. J. Cooper, of Rinehart, Cooper & Stewart, Oklahoma City, Okl., on the brief), for plaintiffs-appellants.
 Calvin W. Hendrickson, Oklahoma City, Okl. (Pierce, Couch, Hendrickson, Gust, & Short, Oklahoma City, Okl., of counsel, on the brief), for defendant-appellee.
 Before BREITENSTEIN, SETH and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 This is a dispute between two insurance companies as to which is the primary insurer on the particular accident here under consideration. The case was tried to the court on a somewhat involved agreed statement of facts.
 
 
 2
 Far-Go Van Lines, Inc., is a Virginia based corporation whose principal business is the transportation of goods for hire throughout the United States, and as such operates under authority granted by the Interstate Commerce Commission to transport goods for hire in interstate commerce, and by the Oklahoma Corporation commission to transport goods for hire within the State of Oklahoma, and by all other states where it does business. Far-Go leases some of its equipment, and the particular trucktractor involved in the accident here in question was leased from Ryder Truck Rental, Inc., a Florida corporation. Since considerable emphasis is sought to be placed on the lease agreement, reference thereto shall now be made.
 
 
 3
 Ryder and Far-Go entered into a written lease agreement wherein Ryder agreed, among other things, as follows:
 
 
 4
 "* * *.
 
 
 5
 "G. To procure and maintain in full force and effect public liability and property damage insurance for all vehicles leased hereunder with LESSEE named as an additional assured in the following limits:
 
 Bodily Injury $100,000 per person
 Bodily Injury $300,000 per accident
 
 6
 Property Damage $ 25,000 per accident."
 
 
 7
 In that section of the lease agreement setting forth the obligations of Far-Go appears the following:
 
 
 8
 "* * *.
 
 
 9
 "F. To procure and maintain in full force and effect (furnishing OWNER with evidence satisfactory to OWNER) standard public liability and property damage insurance for all vehicles leased hereunder written by a company or companies satisfactory to OWNER and with OWNER named as an additional assured in the following limits:
 
 Bodily Injury $ -0- per person
 Bodily Injury $ -0- per accident
 Property Damage $ -0- per accident
 
 10
 "LESSEE further agrees to indemnify and hold OWNER harmless from and against any claims or causes of action for death or injury to persons or loss or damage to property arising out of or caused by the ownership, maintenance, use or operation of any vehicle leased hereunder."
 
 
 11
 At the time of the accident, Liberty Mutual Insurance Company, a Massachusetts corporation, had in force and effect a policy of liability insurance with limits of $100,000 each person, $300,000 each accident, issued in the name of Ryder which afforded coverage to Far-Go and its employees. Also, at the time of the accident, Glens Falls Insurance Company, a New York corporation, had in force and effect a policy of liability insurance with limits of $100,000 each person, $300,000 each accident, issued in the name of Far-Go affording coverage to Far-Go and its employees.
 
 
 12
 Having issued the aforesaid policy to Far-Go, Glens Falls filed certificates of insurance on Far-Go with the Interstate Commerce Commission and the Oklahoma Corporation Commission and all other states where Far-Go did business. The certificate filed with the Interstate Commerce Commission certified that Glens Falls had issued Far-Go,
 
 
 13
 "[a] policy * * * of Automobile Bodily Injury Liability and Property Damage Liability Insurance which, by the attachment of endorsement, form number B.M.C. 90, approved by the Interstate Commerce Commission, has * * * been amended to provide the coverage or security for the protection of the public required with respect to the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission * * *."
 
 
 14
 In this general connection, Interstate Commerce Commission rules and regulations provide that the following endorsement contained in ICC form B.M.C. 90 be attached to all policies issued motor carriers:
 
 
 15
 "Within the limits of liability hereinafter provided it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon or violation thereof, of this endorsement, by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment, irrespective of the financial responsibility or lack thereof or insolvency or bankruptcy of the insured."
 
 
 16
 It was in this setting that one Matthew Lee Hagans, Jr., an employee of Far-Go, while driving a truck-tractor leased from Ryder in the course of his employment for Far-Go, was involved in a collision with two other passenger vehicles in Del City, Oklahoma, resulting in one death and serious injuries to the several occupants of the passenger cars. Far-Go made a written report of the accident to Glens Falls, as required by its policy. Ryder, in turn, commenced its investigation of the accident and upon learning of the Glens Falls policy made a demand upon Glens Falls to defend. Glens Falls refused to defend either Hagans or Far-Go.
 
 
 17
 Without going into unnecessary detail, all of the various claims growing out of the aforesaid collision were either settled or reduced to judgment, and then paid, in the main, by Liberty Mutual and, in part, by Ryder under a deductible clause. The present action was then brought by Liberty and Hagans, as trustee for Ryder, against Glens Falls seeking reimbursement for sums thus paid.
 
 
 18
 After the facts were stipulated to by the parties, the two plaintiffs, i. e., Liberty Mutual and Hagans, as trustee, filed a motion for summary judgment, the grounds therefor being as follows: (1) Hagans was an "insured" under the Glens Falls policy; (2) the Glens Falls policy provided coverage on the trucktractor being operated by Hagans; and (3) the coverage provided by the Glens Falls policy would be primary coverage at the time of the accident.
 
 
 19
 Thereafter, Glens Falls also filed a motion for summary judgment and the gist of this motion was: (1) Under the Glens Falls policy, Hagans was not a primary insured with respect to the particular action to which this litigation relates; (2) the policy provided no primary coverage on the truck-tractor being operated by Hagans; and (3) the policy did not provide primary coverage for Hagans with respect to the particular accident to which this litigation relates.
 
 
 20
 Upon hearing, the trial court denied the motion for summary judgment filed by Liberty Mutual and Hagans, as trustee, and granted the motion for summary judgment filed in behalf of Glens Falls. Accordingly, it was adjudged and decreed that Liberty Mutual and Hagans, as trustee, take nothing against Glens Falls and costs were then assessed against them. Liberty Falls and Hagans now appeal.
 
 
 21
 The appellants' basic position in this court is as follows: (1) Hagans was an "insured" under the Glens Falls policy and the policy provides coverage on the truck-tractor being operated by him; and (2) the coverage thus provided was primary coverage because: (a) under Argonaut Insurance Company v. National Indemnity Company, 435 F.2d 718 (10th Cir. 1971), the required Interstate Commerce Commission endorsement makes Glens Falls the primary insurer as a matter of law, and, additionally, (b) the terms of the policy itself make Glens Falls the primary insurer.
 
 
 22
 The position of Glens Falls is that even though its policy did provide that Hagans was an insured, the policy nonetheless did not apply to the particular accident in question, nor was the coverage provided by its policy under the circumstances primary coverage, all because of the provisions in the lease agreement between Ryder and Far-Go requiring the former to maintain public liability and property damage insurance on leased vehicles. In other words, as we understand it, Glens Falls concedes that it would provide the primary coverage on the accident in question but for the terms and provisions in the lease agreement. We do not agree with the line of argument thus advanced by Glens Falls and shall proceed at once to a consideration of Argonaut Insurance Co. v. National Indemnity Co., supra, which in our view governs the instant case and requires a reversal.
 
 
 23
 In Argonaut, as here, there was a controversy between two insurance companies as to which provided primary coverage for damages arising out of an automobile accident. Argonaut's named insured was the Auto Driveaway Company, whose business was the transportation of cars, and National's named insured was the Executive Car Leasing Company, whose business was leasing cars to the public. A car lessee of Executive terminated his lease, and Executive hired Driveaway to drive the car from Oklahoma to California. In Oklahoma City, Driveaway's driver negligently caused damages to another. Argonaut, the insurer of Driveaway, defended the claim and settled for $55,000. Argonaut then sued National, seeking reimbursement on the ground that National had primary coverage. The trial court denied Argonaut's claim and on appeal we affirmed. In thus affirming, we indicated that we did not need to be concerned with the "other insurance" provisions in each of the policies there involved because of the Interstate Commerce Commission endorsement in the policy issued by Argonaut. In connection with such endorsement, we made the following comment:
 
 
 24
 "This brings us to the Argonaut policy. Argonaut's insured, Driveaway, had an Interstate Commerce Commission permit for the conduct of its driveaway business. Pursuant to ICC regulations the Argonaut policy had a printed endorsement which reads in pertinent part:
 
 
 25
 'Within the limits of liability * * * it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy * * * shall relieve the Company from liability hereunder * * *.'
 
 
 26
 ******
 
 
 27
 * * *
 
 
 28
 "* * * The ICC endorsement, although not expressly referring to the 'other insurance' provisions, says that no condition, provision, stipulation, or limitation of the policy 'shall relieve the Company [the insurer] from liability hereunder.' If the Argonaut position is accepted, it will be relieved from any liability except for excess coverage. We believe that the effect of the endorsement was to make Argonaut the primary insurer.
 
 
 29
 "Whatever may be the liability of National under its policy, we agree with the trial court that '* * * Argonaut cannot escape the plain terms of its insuring agreement in this case.' The ICC endorsement imposes primary liability and eliminates any need for consideration of the effect of the identical 'other insurance' clauses. We have no question of excess because the recovery was within the limits of the Argonaut policy."
 
 
 30
 The teaching of Argonaut is that because of the ICC endorsement in the policy issued Driveaway by Argonaut, Argonaut was the primary insurer as a matter of law, and such holding was obviously grounded on public policy. In the instant case, on the record before us we fail to find in the policy issued Far-Go by Glens Falls an ICC endorsement of the type contained in the policy of insurance issued by Argonaut. However, all parties proceed on the premise that the policy of Glens Falls contains such. Additionally, Glens Falls filed a certificate of insurance with the Interstate Commerce Commission certifying that it had issued Far-Go a policy which was amended by attachment of form B.M.C. 90 as an endorsement in order to be in conformity with the Commission's rules and regulations. Hence, we too assume that the policy issued Far-Go by Glens Falls contained the required ICC endorsement. Such being the case, then, under Argonaut, Glens Falls is the primary insurer.
 
 
 31
 The argument that such result is precluded by the terms and provisions of the lease agreement entered into between Ryder and Far-Go is also answered by Argonaut. In Argonaut, we held that Argonaut was the primary insurer, notwithstanding any "condition, provision, stipulation, or limitation contained in the policy." Such being the rule, it would seem to us that much less can Glens Falls avoid its responsibility as the primary insurer by relying on terms and provisions not contained in any insurance policy, but rather in a collateral lease agreement between the two named insureds in the policies issued by the two competing insurance companies.
 
 
 32
 We do not regard Bennett v. Preferred Acc. Ins. Co. of New York, 192 F.2d 748 (10th Cir. 1951), and Tri-State Insurance Company v. Hobbs, 347 P.2d 226 (Okl.1959), relied on by Glens Falls, to be apposite. In each of those cases, a provision in the insurance policy that the insured would reimburse the insurer was held valid even though the insurance in question was required by state law before the insured could operate as a motor carrier. In Bennett, it was stated that the parties to an insurance contract are at liberty to contract for insurance to cover such risks as they see fit. In Tri-State, it was declared that the design and purpose of compulsory liability insurance required of a common carrier as a condition precedent before such carrier can be issued a permit as a common carrier are to protect the public and third persons, and not to regulate the relations between the insurer and the insured.
 
 
 33
 We need not here determine whether Bennett and Tri-State are in complete harmony with Argonaut. It is sufficient to note that in the instant case we are not concerned with any reimbursement provision. And the lease agreement relied on by Glens Falls is between Ryder and Far-Go. Additionally, the lease agreement, though requiring Ryder to obtain certain insurance, makes no reference to primary coverage in the event Far-Go should also obtain insurance, as it in fact did. On this state of facts, the instant case comes squarely within the rule of Argonaut.
 
 
 34
 Judgment reversed and cause remanded with direction that the trial court vacate its order granting Glens Falls' motion for summary judgment and denying that of Liberty Mutual and Hagans, and that the trial court then enter an order granting the motion for summary judgment filed by Liberty Mutual and Hagans, and enter judgment in conformity therewith.