838 F.2d 1428
 EMPIRE INDEMNITY INSURANCE COMPANY, Plaintiff-Appellee,
Cross- Appellant
v.
CAROLINA CASUALTY INSURANCE COMPANY, Defendant-Appellee,
Cross-Appellant, Cross-Appellee,
v.
NORTHLAND INSURANCE COMPANY, Defendant-Cross-Appellee,
v.
SHELTER GENERAL INSURANCE COMPANY, Defendant-Appellant.
 No. 87-1299.
 United States Court of Appeals,
Fifth Circuit.
 March 11, 1988.
 
 Harvey L. Frye, Jr., Peebles, Betty & Brantley, Fort Worth, Tex., for defendant-appellant.
 H. Allen Pennington, Jr., Law, Snakard, Brown & Gambill, Ft. Worth, Tex., for Empire Indemnity Ins. Co.
 Dean Spurlock, James B. Spisak, Carl G. Quisenberry, Quisenberry, Spurlock & Beech, Ft. Worth, Tex., for Carolina Cas. Ins. Co.
 Ronald D. Wren, Dallas, Tex., for Northland Ins. Co.
 Appeals from the United States District Court for the Northern District of Texas.
 Before TIMBERS,* KING,** and HIGGINBOTHAM, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 This declaratory judgment action arises out of a dispute between four liability insurance companies as to which of them provided coverage in a wrongful death and survival action commenced by the estate of an automobile driver who was killed in a collision with a truck driver who was under a lease agreement with a common carrier.
 
 
 2
 The district court, David O. Belew, Jr., District Judge, in an amended judgment entered March 26, 1987 in the Northern District of Texas, held that Shelter General Insurance Company ("Shelter"), as the primary insurer of the common carrier, and Carolina Casualty Insurance Company ("Carolina"), as the primary insurer of the leased truck driver in the accident, were jointly and equally liable. The court held that the other two insurance companies, Northland Insurance Company ("Northland") and Empire Indemnity Insurance Company ("Empire"), were not liable, although Empire had a duty to defend one of the parties sued.
 
 
 3
 On appeal, Shelter claims that it is entitled to indemnification from Carolina. Both Shelter and Carolina claim that the other two insurance companies also are liable. Empire claims that it is entitled to attorney's fees for defending one of the parties sued since the court held only Carolina and Shelter were liable for coverage.
 
 
 4
 We hold that the district court's findings as to liability were not clearly erroneous and that the court correctly applied controlling law in determining Shelter's liability. Based on Empire's duty to defend in the underlying action, we also hold that the court did not abuse its discretion in denying attorney's fees to Empire for complying with this duty.
 
 I.
 
 5
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 6
 The dispute here arose out of a vehicular accident on April 5, 1983 involving Ira Moore and Jerry Nelson, resulting in the death of Moore. At the time of the accident, Nelson was hauling coal in a tractor-trailer that he owned.
 
 
 7
 Until 1982, Nelson leased his vehicle and his driving services to Curtis Kelly and drove under Kelly's Interstate Commerce Commission ("ICC") authority. The terms of their lease agreement required Nelson to provide his own insurance and to maintain the upkeep of his truck. Kelly is a sole proprietor doing business under various trade names, including C. Kelly Trucking. Kelly employed drivers to drive the trucks he owned and leased additional trucks from owner-operators such as Nelson. The leased drivers owned and maintained their own trucks, supplied their own fuel, and furnished their own insurance. No taxes were withheld from their payments. They were paid differently from Kelly's employee drivers.
 
 
 8
 In 1982, Willis Reasnor and Delbert Raley under the name R & R Trucking obtained authority from the ICC and the Oklahoma Corporation Commission ("OCC") to haul coal from fixed points. Reasnor and Raley each contributed 50% of the fee and were 50% owners of the authority. In 1982, Reasnor obtained contracts to haul coal from Oklahoma to Texas. When Reasnor realized that he did not have enough vehicles of his own to perform the contract, he contacted Raley and Kelly to find out if their drivers were interested in the job. Reasnor, Raley and Kelly had cooperated in the past, borrowing each other's drivers, to keep their drivers fully occupied and to permit them to bid on larger jobs.
 
 
 9
 Reasnor, Raley and Kelly signed an agreement dated December 11, 1982 which provided that Kelly's leased drivers would receive one-third of the work from Reasnor's coal hauling contract. Kelly was not paid for acting as spokesman for the leased drivers. The agreement did not provide for compensation or sharing of revenue between the parties.
 
 
 10
 Nelson, who was unaware of the December 11 agreement, was one of Kelly's leased drivers who signed a lease to haul coal for Reasnor. Under the lease agreement, Nelson was required to maintain his own vehicle. The relationship between Nelson and Reasnor was similar to that between Nelson and Kelly. Between January 1983 and May 1983, Nelson hauled for Reasnor under the R & R authority. During this period, Nelson dealt solely with Reasnor. Raley was not involved. Nelson did not haul for Kelly after he began hauling for Reasnor. Some payments made by Reasnor to Nelson were sent to Kelly, but only for the purpose of reimbursing Kelly for prior loans he had made to Nelson. At the time of the April 5, 1983 vehicular accident with Moore, Nelson was hauling coal for Reasnor under the R & R authority.
 
 
 11
 After the accident, Moore's estate commenced a wrongful death and survival action, alleging that Nelson was negligent and that Reasnor (individually or d/b/a R & R Trucking), Raley (individually or d/b/a R & R Trucking), and Kelly (individually or d/b/a C. Kelly Trucking) were derivatively liable. Four insurance policies in effect on the day of the accident were involved. Some of those policies contained ICC endorsements. ICC rules and regulations require that all policies issued to common carriers contain an endorsement stating that within the limits of the provided coverage, "no condition, provision, stipulation, or limitation contained in the policy ... shall relieve the Company from liability". ICC form B.M.C. 90.
 
 
 12
 Nelson had a Carolina liability insurance policy with a $500,000 combined single limit. This policy named Nelson as the insured, expressly listed the tractor-trailer Nelson was driving at the time of the accident as a covered vehicle, and contained an ICC endorsement. C. Kelly Trucking had a Northland policy listing the named insured, C. Kelly Trucking, as an individual and containing an ICC endorsement. Empire had issued a policy to "Willis Reasnor and Delbert Raley d/b/a R & R Trucking" as the named insured. The Empire policy contained an ICC endorsement and provided coverage to the named insured or to anyone using an automobile specifically described in the policy or owned by the insured. Raley owned the vehicles described in the policy. Shelter had issued four policies to "Willis Reasnor d/b/a R & R Trucking". These four policies were essentially the same, providing coverage for the insured, a permissive user, or anyone vicariously liable for the insured if the accident involved a described automobile.
 
 
 13
 Empire commenced the instant declaratory judgment action in the United States District Court for the Northern District of Texas, grounded on diversity jurisdiction,[1] for a determination of which insurance company provided coverage and had a duty to defend the various defendants in the wrongful death and survival action. Prior to the court's decision, the underlying Moore action was settled for a total of $500,000, to be apportioned in accordance with the court's determination in the instant action.
 
 
 14
 In a memorandum opinion filed March 20, 1987, the court applied Texas choice of law rules and held that Oklahoma law controlled. The court made the following determinations. Carolina was liable for a judgment against Nelson and was liable for a judgment against Reasnor to the extent of Reasnor's vicarious liability. Shelter was liable for a judgment against Nelson and Reasnor by virtue of its policy's endorsement. Empire was not liable since Nelson was not an insured under its policy; Nelson was neither a named insured nor driving a covered vehicle. As a result of Nelson's failure to qualify as an insured under the Empire policy, that policy's ICC endorsement did not attach. Although Empire had no liability for coverage in relation to the accident, under Oklahoma law it did have a duty to defend since the complaint alleged that Nelson was operating under R & R's ICC authority. The court determined that Northland was not liable since Nelson was not operating under Kelly's lease or authority at the time of the accident.
 
 
 15
 In short, the court entered an amended judgment holding that Carolina afforded primary coverage to Nelson; Carolina and Shelter both provided coverage to Reasnor; Shelter's ICC endorsement rendered it the primary insurer of Reasnor; Carolina and Shelter were jointly or equally liable on the settlement up to their policy limits; and, although Empire did not provide coverage, it had a duty to defend Reasnor in the Moore action.
 
 
 16
 On appeal, none of the insurance companies disputes that Oklahoma law controls. The appeal raises a number of alleged errors in apportioning damages. Shelter claims that, since its insured was derivatively liable, it is entitled to indemnification from Carolina as the insurer of the actual tortfeasor. Both Shelter and Carolina claim that Empire is liable for coverage to Reasnor either because Empire's policy does not differ from Shelter's or because the policy covers R & R Trucking and Reasnor and Raley are estopped from denying their partnership. Empire disputes these claims and asserts that it is entitled to attorney's fees for defending Reasnor in the wrongful death and survival action. Empire asserts that it was forced to defend Reasnor when Carolina and Shelter refused to do so, and the court found Carolina and Shelter solely liable for any judgment against Reasnor. Carolina claims that Northland is liable for coverage to Kelly due to Kelly's alleged failure to terminate his lease with Nelson in compliance with ICC regulations.
 
 
 17
 Emerging from this morass of contentions and counter-contentions, we believe that the law provides a clear and just solution.
 
 II.
 
 18
 We turn first to whether Carolina is primarily liable. If we find Carolina primarily liable, it would be solely liable since the underlying Moore action was settled for a sum within Carolina's policy.
 
 
 19
 In Argonaut Insurance Co. v. National Indemnity Co., 435 F.2d 718, 720 (10th Cir.1971), the Tenth Circuit held that, when two insurance policies were implicated in a vehicular accident involving motor carriers and one policy contained a relevant ICC endorsement, the issuer of that policy was the primary insurer as a matter of law. The insurance company which provided coverage would be the primary insurer notwithstanding any "condition, provision, stipulation, or limitation contained in the policy." Id. at 720. In Hagans v. Glens Falls Insurance Co., 465 F.2d 1249, 1252 (10th Cir.1972), the Tenth Circuit reaffirmed its Argonaut holding and explained that such a holding "was obviously grounded on public policy." Relying on the rule established in Argonaut, the court held that an insurance company could not avoid its responsibility as the primary insurer by relying on a collateral lease agreement between the two named insureds in the policies issued by the two competing insurance companies. Id. The court also observed that, although the lease agreement required the lessee to obtain certain insurance, the agreement made no reference to primary coverage. In Ryder Truck Rental v. International Van & Storage, 550 F.Supp. 725, 728 (W.D.Okla.1981), an Oklahoma federal district court, citing both Argonaut and Hagans, held that, unless the lease agreement expressly provided for indemnification, none would be read into the agreement. The court expressly stated that a lease agreement provision requiring a party to furnish liability insurance does not give rise to rights of indemnification. Id.
 
 
 20
 Shelter's argument that it is entitled to indemnification fails under the Argonaut line of cases. While as a general rule one who is constructively liable to an injured party is entitled to indemnification under Oklahoma law, none of the cases cited by Shelter involved a common carrier. Argonaut and its progeny enunciate a public policy determination that an insurance policy containing an ICC endorsement provides primary coverage. Although the lease agreement between Nelson and Raley required Nelson to obtain insurance, such a provision did not give Shelter the right to indemnification. The lease agreement did not contain an express written agreement to indemnify.
 
 
 21
 Shelter attempts to distinguish these cases by asserting that in the instant case two policies contained an ICC endorsement. Although the Argonaut line of cases involved only one policy containing an ICC endorsement, the court in the instant case found that Nelson was driving under Reasnor's ICC authority--a finding we hold was not clearly erroneous. Based on this finding, the court concluded that the Shelter policy, which provided Reasnor with an ICC endorsement, made Shelter the primary insurer. It comports with common sense to hold that, when more than one policy contains an ICC endorsement, the insurance company providing coverage to the person or company whose ICC authority was implicated is the primary insurer. Language in the Argonaut cases indicates that this was the courts' intent.
 
 
 22
 Accordingly, we affirm as not clearly erroneous the district court's holding that Carolina as the primary insurer of Nelson, and Shelter as the primary insurer of Reasnor, are jointly and equally liable.
 
 III.
 
 23
 We turn next to the question whether Empire's policy also provided coverage to Reasnor. Shelter argues that Empire's policy is not distinguishable from its own policy--Empire's policy also names Reasnor as an insured and contains an ICC endorsement covering Reasnor. Carolina argues that Reasnor and Raley are estopped from claiming that they did not have a partnership by representing to the ICC that they were partners in order to obtain the certificates and to Empire to obtain insurance. According to Carolina, Nelson relied on the permit allegedly obtained by the "partnership".
 
 
 24
 Both Shelter and Carolina apparently ignored the basis of the court's finding that Empire's policy did not provide coverage. The Empire policy expressly limited its coverage to the use of covered vehicles as defined in the policy. The court found that the vehicle involved in the accident did not qualify. That finding is not challenged. We hold that it is not clearly erroneous. Since the vehicle was not a covered vehicle, Nelson did not qualify as an insured under the policy. Since the policy did not attach, therefore, neither did the ICC endorsement,[2] thus making the issue of partnership irrelevant.[3]
 
 IV.
 
 25
 We turn next to Carolina's claim that the court erred in not holding Kelly and consequently his insurer Northland liable for failure to comply with ICC lease termination requirements. Carolina asserts that at the time of the accident Nelson retained Kelly's lease and continued to post Kelly's name and ICC certificate numbers on Nelson's trailer, in violation of ICC regulations.
 
 
 26
 Where a leased driver is operating under the permit of a licensed carrier, the driver is considered a "statutory employee" of the carrier, who is vicariously liable under ICC regulations. ICC regulations require display of the carrier's insignia and permit number. Upon termination of a lease, ICC regulations provide that "the authorized carrier shall remove all identification showing it as the operating carrier before giving up possession of the equipment". 49 C.F.R. 1057.11 (1986).
 
 
 27
 There is precedent holding that, when a leased driver is making a trip during the term of but outside the scope of his employment and continues to display the required ICC insignia and permit number, that driver continues to be a statutory employee of the carrier during the period he displays the authority, even though he is not actually operating under that authority at the time of the collision. This sometimes is referred to as the "logo liability" rule. E.g., Grinnell Mutual Reinsurance Co. v. Empire Fire & Marine Insurance Co., 722 F.2d 1400, 1404 (8th Cir.1983), cert. denied, 466 U.S. 951 (1984); Rodriguez v. Agers, 705 F.2d 1229, 1230 (10th Cir.1983). But see Wilcox v. Transamerican Freight Lines, Inc., 371 F.2d 403 (6th Cir.) (rejecting logo liability rule), cert. denied, 387 U.S. 931 (1967); Gudgel v. Southern Shippers, Inc., 387 F.2d 723 (7th Cir.1967) (same).
 
 
 28
 The district court here found that Kelly's staff had marked the Nelson lease as "terminated" when Nelson began hauling for Reasnor and that Kelly had told Nelson to remove all placards showing Kelly's authority from the doors of his vehicles and to remove Kelly's lease from his vehicles.
 
 
 29
 The tractor which, unlike the trailer, operated under its own power, had R & R's insignia on it. The court held that Nelson was operating under the R & R insignia, not Kelly's insignia.
 
 
 30
 In reviewing this finding, we must keep in mind that, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). Even if we were to hold that Nelson had not removed Kelly's insignia from the trailer, we are satisfied that the court was not clearly erroneous in finding that Nelson was driving under the R & R authority. Accordingly, we need not determine whether the logo liability rule applies if the insignia in dispute appeared only on the trailer and not on the tractor.
 
 V.
 
 31
 This brings us to a claim which warrants only brief discussion--Empire's claim for attorney's fees. It is well established that a district court has discretion to award attorney's fees in a declaratory judgment action. Empire does not challenge the court's finding that it had a duty to defend, nor does it claim that the court abused its discretion in failing to award fees. Rather, Empire asserts that the abuse of discretion standard applies to the determination of whether the fees awarded were reasonable, not whether fees should have been awarded at all.
 
 
 32
 We find this argument specious. Relevant precedent states that an award of attorney's fees is within the discretion of the district court. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 716-17 (5th Cir.1974). Since Empire made no allegation of abuse of discretion and, indeed, the court found that Empire was required to defend Reasnor, the court did not err in denying attorney's fees.
 
 VI.
 To summarize:
 
 33
 We affirm the judgment of the district court holding Shelter and Carolina jointly and equally liable for the settlement of the underlying wrongful death and survival action.
 
 
 34
 We hold that under controlling Oklahoma law Shelter provided primary coverage to the common carrier pursuant to ICC regulations. When more than one policy with an ICC endorsement is involved, we hold that the issuer of the policy providing coverage to the common carrier whose ICC authority is implicated is the primary insurer.
 
 
 35
 We also hold that the court was not clearly erroneous in finding that Carolina provided primary coverage to the common carrier's leased driver who actually was involved in the accident, and that Northland was not liable.
 
 
 36
 The court was not clearly erroneous in determining that Empire's ICC endorsement did not attach since the policy itself did not attach. Since Empire had a duty to defend one of the defendants in the underlying action, however, the court did not abuse its discretion in denying attorney's fees to Empire.
 
 
 37
 AFFIRMED.
 
 
 
 *
 Of the Second Circuit, by designation
 
 
 **
 Formerly Judge Carolyn Dineen Randall
 
 
 [1]
 Empire is incorporated and has its principal place of business in Oklahoma. Carolina is incorporated and has its principal place of business in Florida. Shelter is incorporated and has its principal place of business in Missouri. Northland is incorporated and has its principal place of business in Minnesota
 
 
 [2]
 The court indicated that perhaps Nelson would have been covered by the endorsement if the Empire policy contained language defining the insured as "any person who would not otherwise be covered under the underlying policy except by provisions of a motor vehicle financial responsibility law." As the court found, however, the Empire policy contained no such language
 
 
 [3]
 The court did not reach the partnership issue in determining whether Empire provided coverage because it found that the policy did not cover the vehicle involved. The court specifically found, however, that no partnership existed for the purpose of determining coverage of Raley under the Shelter policies issued in Reasnor's name. Moreover, the court found that Nelson did not appear to have relied on the existence of the partnership. Nelson dealt only with Reasnor. He apparently was unaware of the agreement between Reasnor, Raley and Kelly