John C. BUDD, Plaintiff,

v.

AMERICAN EXCESS INSURANCE COMPANY and Swett & Crawford, Defendants.

AMERICAN EXCESS INSURANCE COMPANY, Third–Party Plaintiff,

v.

PROTECTIVE INSURANCE COMPANY, Third–Party Defendant.

Civ. A. No. 87–B–854.

United States District Court, D. Colorado.

July 7, 1989.

Clifford L. Beem, Stuart D. Mann, Clifford L. Beem & Associates, P.C., Denver, Colo., John Adams, III, Stanton T. Mathews, Adams, Rowley, Mathews and Hadley, P.C., Fullerton, Cal., for plaintiff.

Ira S. Lipsius, Schindel, Cooper & Farman, New York City, Mark Williams, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., for defendant American Excess.

Paul D. Cooper, Cooper & Kelley, Denver, Colo., for defendant Swett & Crawford.

Mike Hilgers, Jeffery M. Grass, The Law Firm of Mike Hilgers, Arvada, Colo., for 3rd Party defendant Protective Ins.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This matter is before the Court on: (1) third-party defendant's, Protective Insurance Company (PIC), motion for summary judgment on the third-party complaint of defendant and third-party plaintiff, American Excess Insurance Company (American Excess); (2) American Excess' cross-motion for summary judgment against PIC; and (3) American Excess' motion for summary judgment against plaintiff, John C. Budd (Budd). Summary judgment is granted in favor of American Excess and against PIC and Budd.

The underlying facts are undisputed. The case arises out of a motor vehicle accident which occurred in Colorado on January 27, 1982. James McAmis (McAmis), a driver for Great Basin Transport, Inc. (GBT), was driving a tractor/trailer rig on Interstate-70 when he collided with Budd's car. The truck was owned by GBT and was leased to Delta Lines, Inc. (Delta). Delta is an interstate motor carrier licensed by the Interstate Commerce Commission (ICC) to haul goods over authorized routes. McAmis and GBT were insured by Guarantee Insurance Company (Guarantee) with a policy limit of $600,000.00. McAmis and GBT also had an umbrella policy with American Excess providing for $2,000,000.00 in excess coverage. American Excess denied coverage for the accident claiming that its policy was not effective at the time of the accident. Delta was insured by PIC with a policy providing $9,950,000.00 in coverage.

Budd sued McAmis, GBT, and Delta for injuries incurred as a result of the accident. Guarantee appointed counsel to defend McAmis and GBT, and PIC appointed counsel to defend Delta. Counsel appointed by Guarantee later was replaced by Delta's appointed counsel, (Defense Counsel), who undertook the defenses of McAmis, GBT, and Delta. Defense Counsel then negotiated a stipulated judgment in the amount of $3,350,000.00 which was entered against McAmis and GBT, and the action against Delta was discontinued. Of the $3,350,000.00, Guarantee paid $600,000.00, its policy limit, and PIC paid an additional $750,000.00. The settlement agreement also provided that McAmis and GBT assign to Budd their rights against American Excess. In turn, Budd agreed not to execute on the judgment against McAmis, GBT, Guarantee, or PIC.

In the present action, Budd seeks to satisfy the remaining $2,000,000.00 of the consent judgment against McAmis and GBT from the American Excess umbrella policy he contends provided coverage to McAmis and GBT on the date of the accident.

American Excess argues that its policy was not effective on the date of the accident, and even if it were, American Excess has no obligation to Budd, McAmis, or GBT because its policy is excess, and does not provide coverage until the underlying policies of Guarantee and PIC are exhausted. Although there is no question that the Guarantee policy limits were exhausted, American Excess argues that the PIC policy not yet has been exhausted. In its third-party complaint against PIC, American Excess requests a money judgment against PIC to the extent American Excess is found liable for damages to Budd and a declaration that: (1) McAmis and GBT are insured under the PIC policy; and that (2) the PIC policy provides primary coverage to McAmis, GBT and Delta. The cross-mo-

tions for summary judgment revolve around this key issue.

### A.

#### 1.

The Guarantee policy issued to GBT states that Guarantee:

> [W]ill pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

McAmis was a covered insured under the Guarantee policy.

The Guarantee policy contained a primary and excess insurance provision. That provision provides in pertinent part that:

> PART VII—CONDITIONS
> B.1.
> This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business and over a route or territory, if any, you are authorized to serve by public authority. *This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker.* (Emphasis added).

There is no question that the tractor/trailer rig driven by McAmis was hired by Delta from GBT. However, Guarantee's policy also contains both ICC and Public Utilities Commission (PUC) endorsements which negate the limiting primary/excess provision in the Guarantee policy. *Empire Fire and Marine Ins. v. Guaranty Nat. Ins.*, 868 F.2d 357 (10th Cir.1989). Once the ICC endorsement removes the primary/excess clause, the policy is treated as affording primary coverage. *See Argonaut Ins. Co. v. National Indem. Co.*, 435 F.2d 718 (10th Cir.1971).

### B.

■] The PIC policy issued to Delta provided coverage for the liability of Delta for losses arising out of Delta's "ownership or maintenance and conduct of [its] business as a public carrier of merchandise." It provides for a $9,950,000.00 ultimate net loss, which is defined by the policy as:

> [T]he sums paid in settlement of losses for which the Insured is liable after making deductions for all recoveries, salvages, and other collectible insurance, and shall exclude all expenses and costs.

There is no other limiting language contained in the PIC policy.

The PIC policy was issued, countersigned, and delivered to Delta in California, Delta's principal place of business. California Insurance Code § 11580.1 mandates that certain provisions be included in any policy issued or delivered in California. By operation of law, those terms are part of the PIC policy delivered to Delta in California. *See St. Farm Mutual Auto Ins. Co. v. Allstate Ins. Co.*, 9 Cal.App.3d 508, 88 Cal.Rptr. 246 (1970); *See also Endo Laboratories, Inc. v. Hartford Ins. Group*, 747 F.2d 1264 (9th Cir.1984). The Cal.Ins.Code § 11580.1(a) provides that:

> No policy of Automobile Insurance described in Section 16054 of the Vehicle Code covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be issued or delivered in this state ... unless it contains the provision set forth in subdivision (b)....

Section 11580.1(b) provides:

> Every policy of automobile liability insurance to which subdivision (a) applies shall contain all of the following provisions:
> (4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission....

■] The PIC policy also contains an ICC required endorsement which nullifies any condition attached to the PIC policy which may relieve PIC of liability. *Empire Fire and Marine Ins. v. Guaranty Nat. Ins.*, *supra.* A subsequent endorsement, endorsement 48, arguably deletes the ICC endorsement from the PIC policy. It is

unclear when endorsement 48 became effective. Nevertheless, the ICC endorsement does not establish primary liability over other policies that are also primary by their own terms. *Id.* Nor does it purport to limit or delete clauses in other policies issued by other insurance companies that may also have contractually assumed primary liability for the risk involved. *Id.*

Under federal law, the insurer of an ICC-licensed carrier is required to provide primary coverage for any final judgment obtained against the carrier. However, the mere fact that an interstate carrier is involved does not absolve other insurers from their obligations under other policies which are applicable to the claims. As stated in *American General Fire & Casualty Co. v. Truck Ins. Exch.*, 660 F.Supp. 557 (D.Kan.1987),

> [T]here is no reason that state laws or private agreements should not be able to allocate *ultimate* financial responsibility in such a situation. Nor does public policy dictate that insurers of truck owners be absolved from risks they voluntarily assumed solely because the vehicle was leased to an interstate carrier.

*Id.* at 565.

■ Under the lease agreement between Delta and GBT, Delta held authority by the ICC to transport a variety of commodities for hire. However, the lease provides:

7. RISKS AND RESPONSIBILITIES.

> B. [GBT] assumes liability for bodily injuries to or the death of any persons resulting from the negligent operation, maintenance or use of the vehicles described herein.

The lease agreement further provides under RISKS AND RESPONSIBILITIES that:

> D. [GBT] shall, at [its] sole expense, provide liability insurance to cover the risks described in this paragraph seven in the amounts and form required by the Utah Public Service Commission and [Delta], naming [Delta] as an also insured. [GBT] shall maintain in force and effect at all times public liability insurance in the minimum sum of $200,000.00

and property damage insurance in the minimum sum of $50,000.00.

Under the lease agreement, GBT, and its insurer, Guarantee, are liable to Budd. Yet, the PIC policy, as modified by the statutory provisions required by the California Insurance Code, makes PIC the insurer of McAmis and GBT. Therefore, PIC is a primary insurer of McAmis and GBT.

■ American Excess afforded excess coverage to GBT. Excess insurance such as that provided by American Excess does not qualify as valid and collectible until the primary policy is exhausted. *See Allstate Ins. Co. v. Frank B. Hall & Co.*, 770 P.2d 1342 (Colo.App.1989). PIC settled the case for less than its policy limits, and paid only a portion of the judgment. Although the Guarantee policy was exhausted, the PIC policy was not. Because the PIC policy is primary and was not exhausted such a settlement did not trigger American Excess' liability as an excess carrier. *See Hibbs v. Farmers Ins. Co., Inc.*, 725 P.2d 1232 (Okla.1985); *Smith v. Government Employees Ins. Co.*, 558 P.2d 1160, 1162 (Okla.1976).

Accordingly, it is ORDERED that:

1. PIC's motion for summary judgment on American Excess' third-party complaint is denied.

2. American Excess' cross-motion for summary judgment against PIC is granted.

3. American Excess' motion for summary judgment against Budd is granted.

Judgment shall enter in favor of American Excess and against PIC and Budd, with each party to pay their own costs and attorney fees.