928 F.2d 344
 John C. BUDD, Plaintiff-Appellant,
v.
AMERICAN EXCESS INSURANCE COMPANY,
Defendant-Third-Party-Plaintiff-Appellee,
SWETT & CRAWFORD, Defendant-Appellee,
v.
PROTECTIVE INSURANCE COMPANY, Third-Party-Defendant.
John C. BUDD, Plaintiff,
v.
SWETT & CRAWFORD, Defendant-Appellee,
AMERICAN EXCESS INSURANCE COMPANY,
Defendant-Third-Party-Plaintiff-Appellee,
v.
PROTECTIVE INSURANCE COMPANY, Third-Party-Defendant-Appellant.
 Nos. 89-1247, 89-1255.
 United States Court of Appeals,
Tenth Circuit.
 March 19, 1991.
 
 John C. Adams, III, of Adams, Rowley, Mathews and Hadley, Fullerton, Cal. (Stanton T. Mathews of Adams, Rowley, Mathews and Hadley, Fullerton, Cal., and Clifford L. Beem & Associates, Denver, Colo., with him on the briefs), for plaintiff-appellant in 89-1247.
 Ira S. Lipsius of Schindel, Cooper & Farman, New York City, and Paul D. Cooper of Cooper & Kelley, P.C., Denver, Colo. (John G. McCann of Schindel, Cooper & Farman, New York City, William G. Imig and Mark W. Williams of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., with Mr. Lipsius on the brief), for appellees in 89-1247.
 Mike Hilgers (Jeffery M. Grass with him on the brief) of The Law Firm of Mike Hilgers, Arvada, Colo., for third party defendant-appellant in 89-1255.
 Ira S. Lipsius of Schindel, Cooper & Farman, New York City (John G. McCann of Schindel, Cooper & Farman, New York City, William G. Imig and Mark W. Williams of Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, Colo., with him on the brief), for appellees in 89-1255.
 Before McKAY, McWILLIAMS and SEYMOUR, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This case arises out of an automobile accident which occurred in Colorado on January 27, 1982. The accident involved a collision between a tractor leased to Delta Lines, Inc., by Great Basin Transport, Inc., and an automobile driven by John Budd. Great Basin Transport is an independent trucking contractor that contracted with Delta to provide tractors and drivers to haul Delta cargo from Salt Lake City, Utah, to Denver, Colorado. At the time of the accident, the tractor was pulling two trailers carrying Delta cargo and was operating under the authority of a permit issued to Delta by the Interstate Commerce Commission.
 
 
 2
 Pursuant to the carriage transport agreement between Great Basin and Delta, Great Basin assumed responsibility for control of the drivers and equipment. Significantly, the agreement imposes on Great Basin the full responsibility for all personal injury liability arising out of the trucking operation. Great Basin is also required to secure appropriate public liability insurance to cover that obligation.
 
 
 3
 Mr. Budd filed suit against the driver and Delta Lines in the United States District Court for the District of Colorado for injuries he sustained in the collision. Great Basin was later added as a defendant to the action.
 
 
 4
 At the time of the accident, Great Basin Transport and the driver were insured by Guarantee Insurance Company. The policy's limit was $600,000. Great Basin also had an umbrella policy with American Excess, which provided excess coverage of $3,000,000 above the coverage provided by the Guarantee policy.[1] Delta Lines was insured under a policy issued by Protective, whose limit was $9,950,000.
 
 
 5
 Protective engaged counsel to defend Delta. Guarantee appointed counsel to represent Great Basin and the driver. Later, counsel appointed by Protective also undertook the defenses of Great Basin and the driver.
 
 
 6
 On October 27, 1986, the parties entered into a stipulated settlement agreement. By its terms, Great Basin and the driver are jointly and severally liable to Mr. Budd in the amount of $3,350,000. Great Basin and the driver tendered payment of $1,350,000; Guarantee (Great Basin's primary insurance carrier) paid $600,000, its policy limit, while Protective (Delta's insurance carrier) paid the balance. Great Basin and the driver also assigned all of their rights of action against American Excess, if any, to Mr. Budd. In exchange, Mr. Budd abandoned his action against Delta. Mr. Budd also agreed to refrain from directly or indirectly attempting to execute on the remainder of the judgment against Great Basin, the driver, Guarantee or Protective.
 
 
 7
 Mr. Budd then filed a complaint, as assignee of Great Basin and the driver, against American Excess, Great Basin's excess insurance carrier. He seeks satisfaction of the $2,000,000 balance of the settlement figure from the umbrella policy issued to Great Basin.[2]
 
 
 8
 After Mr. Budd filed suit, American Excess filed a third-party complaint against Protective. American Excess seeks monetary relief for any amount for which it is found liable to the plaintiff. In the alternative, it seeks a declaratory judgment that the Protective policy issued to Delta provides primary coverage to Great Basin, the driver and Delta. As excess insurer over the Guarantee policy, American Excess argues that, by its terms, its policy is excess over the coverage provided by the Protective policy. Thus, American Excess argues, its policy is effective only when the limits of both the Guarantee and Protective policies have been exhausted.
 
 
 9
 Protective filed a motion for summary judgment against American Excess's third-party complaint. American Excess then filed a motion for summary judgment against the plaintiff and a cross-motion for summary judgment against Protective.
 
 
 10
 The district court granted summary judgment in favor of American Excess and against Protective and the plaintiff. 715 F.Supp. 981. The court determined that, by operation of California and federal law, the policy issued by Protective to Delta (the lessee) provides primary coverage to Great Basin (the lessor) and the driver. Because the primary policy issued by Protective had not yet been exhausted, the court reasoned, the settlement agreement did not trigger the excess coverage provided by American Excess despite the exhaustion of Guarantee's policy.
 
 
 11
 Mr. Budd appeals here the applicability of Protective's policy to the underlying accident. In the event that this court reverses the district court's judgment against plaintiff Budd, Protective appeals the summary judgment awarded to American Excess on its third-party complaint. We review a summary judgment de novo to determine whether the district court correctly concluded that there were no issues of material fact and that the prevailing party was entitled to a judgment as a matter of law. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988).
 
 
 12
 The parties' dispute here centers around the interpretation of the relevant provisions contained in the insurance policies issued by Protective and American Excess. Both insurers argue that the policy of the other provides primary coverage of the accident.
 
 
 13
 We begin our analysis with the coverage afforded Great Basin and the driver, if any, by the policy Protective issued to Delta. That policy provides that Protective shall indemnify Delta for all sums, up to the policy limits, it shall become liable to pay for, among other things, personal injury and destruction of property of others. The policy does not expressly provide coverage for permissive users. The district court concluded, however, that coverage of permissive users was required under California law. We agree that the California permissive user provision applies to the policy Protective issued to Delta.
 
 
 14
 In a diversity action, we look to the law of the state where suit was brought. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). When interpreting contracts, Colorado courts employ the law of the state with the most significant relationship to the contract. Webb v. Dessert Seed Co., 718 P.2d 1057, 1066 (Colo.1986); Wood Bros. Homes, Inc. v. Walker Adjustment Bureau, 198 Colo. 444, 601 P.2d 1369, 1372-73 (1979). Insurance policies generally are interpreted under the law of the state where the policy was issued. See Blue Cross of Western New York v. Bukulmez, 736 P.2d 834, 841 (Colo.1987). Here, the Protective policy was countersigned, issued, and delivered in California, where Delta was domiciled.
 
 
 15
 California law requires that an automobile liability policy issued or delivered in that state provide coverage to permissive users of the insured vehicles "to the same extent that insurance is afforded to the named insured."[3] Cal.Ins.Code Sec. 11580.1(b)(4) (West 1988). The district court relied on this statute to hold that Great Basin and the driver, as permissive users of Delta, were insured under the Protective policy.
 
 
 16
 Delta nevertheless points to a clause in the Protective policy that states that no coverage applies until "other collectible insurance" has been paid. This clause would seem to apply to permissive users as well as to the named insured. The district court, relying on this court's decision in Empire Fire & Marine Ins. Co. v. Guaranty Nat'l Ins. Co., 868 F.2d 357 (10th Cir.1989), however, held that the ICC endorsement contained in the Protective policy negated this limiting provision. By operation of the ICC endorsement, therefore, the Protective policy would provide primary coverage over an accident for which Delta is found liable regardless of the existence of other collectible insurance.[4] Because California law requires coverage of permissive users to the same extent it is afforded to Delta, the district court concluded that the Protective policy also afforded primary coverage to Great Basin and the driver by operation of the California permissive user provision. We agree with this analysis.
 
 
 17
 Mr. Budd next argues that, regardless of the effect of the ICC endorsement, the carriage transport contract between Great Basin and Delta defines the liability of each party. In the contract, Great Basin assumed full responsibility for personal injury liability arising out of the trucking operation. Mr. Budd reasons that because Delta was entitled to recover all of its losses from Great Basin under the carriage transport agreement, Delta's policy with Protective cannot be reached until all of Great Basin's policies have been exhausted. He correctly argues that the California statute expressly does not affect responsibility for liability assumed by contract. Cal.Ins.Code Sec. 11580.1(c)(1) (West 1988).
 
 
 18
 We note that Mr. Budd brought this suit as assignee of Great Basin and the driver, rather than as an injured party. We need not therefore determine whether California law would require Protective initially to compensate the injured party. We need only analyze the ultimate responsibility for payment of the settlement agreement. We believe that the clause in the carriage transport agreement that imposes on Great Basin the full responsibility for all personal injury arising out of the trucking operation includes liability arising from the California permissive user provision. Because Delta is not ultimately liable for the injuries sustained by Mr. Budd, we do not believe that its policy with Protective must be exhausted before the policy issued by American Excess to Great Basin may be pierced.
 
 
 19
 American Excess responds, however, that the settlement agreement does not include Delta, the party Great Basin agreed to indemnify, but instead imposed liability on the driver and Great Basin. Therefore, it contends, Mr. Budd is not entitled to collect against Great Basin under the terms of the carriage transport agreement.
 
 
 20
 Our reading of the transport agreement, however, is not so restrictive. It is clear that primary coverage of Great Basin and the driver under the Protective policy is only by virtue of Delta's liability pursuant to the California permissive user provision. To deny Protective the benefits of the indemnity provision when its insured is not ultimately liable for the accident would create an anomalous result. The carriage transport agreement therefore relieves Delta's insurer from ultimate responsibility to cover liability imposed on permissive users.
 
 
 21
 American Excess finally relies on the ICC endorsement contained in the Protective policy and our decision in Hagans v. Glens Falls Ins. Co., 465 F.2d 1249 (10th Cir.1972), to argue that its liability should not be measured by a lease to which it is not a party. In summarizing Hagans, we stated in Empire that the lessee's insurance company could not "rely on indemnification language in the lease between the lessor and the lessee to limit its liability." Empire, 868 F.2d at 364. Instead, "the liability of the lessee's insurer had to be measured by the terms of its own policy, and not by the terms of a lease to which it was not even a party." Id.
 
 
 22
 We find American Excess's reliance on the ICC endorsement and Hagans unavailing. We analyze the carriage transport agreement here to determine the coverage of Protective's policy pursuant to California law and not to measure the liability of American Excess. The ICC endorsement on which American Excess places great emphasis only negates the clause in the Protective policy stipulating that there is no coverage until "other collectible insurance" has been paid. The ICC endorsement "deletes limiting clauses in the policy to which it is attached, but it does not create new, additional obligations in the policy...." Empire at 363 (emphasis in original). Because the carriage transport agreement relieves Protective of the requirements contained in the California permissive user provision, Protective is not obligated to cover the ultimate liability of Great Basin and the driver.
 
 
 23
 In concluding that the transport agreement defines the ultimate liability between the parties, we note that section 11580.1 of the California Insurance Code is designed to protect citizens from being denied full compensation for their injuries due to uninsured permissive users of automobiles. From a public policy perspective, "it makes little difference which of the two insurers is ultimately responsible for a particular loss." Argonaut Ins. Co. v. Transport Indemnity Co., 6 Cal.3d 496, 99 Cal.Rptr. 617, 621, 492 P.2d 673, 677 (1972) (quoting Pacific Indem. Co. v. Liberty Mut. Ins. Co., 269 Cal.App.2d 793, 796, 75 Cal.Rptr. 559 (1969).
 
 
 24
 We therefore conclude that, by virtue of the transport agreement between Great Basin and Delta, Great Basin bears the full responsibility arising out of the trucking operation. Notwithstanding the California permissive user statute and the ICC endorsement contained in the Protective policy, we believe that Mr. Budd is not required to exhaust the policy issued by Protective before bringing suit against American Excess under its umbrella policy issued to Great Basin. We do not express judgment, however, concerning the American Excess policy's coverage of the accident in question. The judgments of the district court, granting summary judgment in favor of American Excess and against Mr. Budd and Protective, are REVERSED. We REMAND the case for further proceedings consistent with this opinion.
 
 
 
 [1]
 Although American Excess disputes the effective date of its policy's coverage, we assume the policy was in effect at the time of the accident for purposes of this appeal
 
 
 [2]
 The complaint was later amended to add Swett and Crawford, an insurance broker, as a defendant. Plaintiff's dispute with Swett and Crawford, however, is not involved in this appeal
 
 
 [3]
 Section 11580.1(b)(4) provides, in relevant part:
 (b) Every policy of automobile liability insurance to which subdivision (a) applies shall contain ...
 ....
 (4) Provision affording insurance to the named insured with respect to any motor vehicle covered by such policy, and to the same extent that insurance is afforded to the named insured, to any other person using, or legally responsible for the use of, such motor vehicle, provided such use is by the named insured or with his or her permission, express or implied, and within the scope of such permission.
 Cal.Ins.Code Sec. 11580.1(b)(4) (West 1988).
 
 
 [4]
 In Empire, the lessee's policy contained an excess coverage clause. In addition, however, an ICC endorsement was attached to the policy. We held in Empire that the ICC endorsement rendered co-primary the coverage of the lessee's policy with another policy that by its terms provided primary coverage of the accident. The cause was then remanded to determine the priority of the policies under traditional state contract and insurance law. Id. at 368